**REDACTED**

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

NO. 22-3312
CRIMINAL

_____

UNITED STATES OF AMERICA,
Appellee,
v.
DEMARCUS GEORGE
Appellant

_____

Appeal from the United States District Court
for the Eastern District of Arkansas

The Honorable Brian S. Miller
United States District Judge

_____

BRIEF OF APPELLEE

_____

JONATHAN D. ROSS
United States Attorney
Eastern District of Arkansas

KRISTIN BRYANT
Assistant U.S. Attorney
P. O. Box 1229
Little Rock, Arkansas 72203
501-340-2600

Attorneys for Appellee

# SUMMARY OF THE CASE

On September 3, 2019. DeMarcus George and another individual were indicted on charges of conspiracy to commit sex trafficking of a minor and sex trafficking of a minor. On November 10, 2021, George waived indictment and was charged by Superseding Information with conspiracy to commit sex trafficking of a minor. He pled guilty to the charge in the Superseding Indictment. The district court sentenced him to life imprisonment and imposed lifetime supervised release.

George appeals, arguing that his sentence is substantively unreasonable. He also argues that the written judgment impermissibly varied from the oral pronouncement at sentencing because the written judgment includes standard conditions of probation.

The United States respectfully asserts that the issues in this appeal can be decided on the briefing. If this Court elects to hear oral argument, the United States respectfully requests that it be granted the same amount of time at argument as is given to George.

Appellate Case: 22-3312    Page: 2    Date Filed: 03/16/2023 Entry ID: 5255931

# TABLE OF CONTENTS

SUMMARY OF THE CASE..............................................................................i

TABLE OF CONTENTS............................................................................. ii

TABLE OF AUTHORITIES ........................................................................ iii

JURISDICTIONAL STATEMENT ................................................................1

STATEMENT OF THE ISSUE.....................................................................2

STATEMENT OF THE CASE .......................................................................3

SUMMARY OF THE ARGUMENT ..............................................................9

ARGUMENT .............................................................................................11

CONCLUSION..........................................................................................25

CERTIFICATION OF COMPLIANCE ........................................................26

CERTIFICATE OF SERVICE ....................................................................27

Appellate Case: 22-3312    Page: 3    Date Filed: 03/16/2023 Entry ID: 5255931

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Gall v. United States*, 552 U.S. 38 (2007) ........................................................11, 17

*Kennedy v. Louisiana*, 554 U.S. 407 (2008) ..........................................................15

*New York v. Ferber,* 458 U.S. 747 (1982) ...............................................................15

*United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008) ......................................2, 15

*United States v. Davenport*, 910 F.3d 1076 (8th Cir. 2018) ..................................15

*United States v. Demeyer*, 665 F.3d 1374 (8th Cir. 2012) .................................2, 15

*United States v. Drapeau*, 644 F.3d 646 (8th Cir. 2011) .......................2, 17, 18, 24

*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009) ................................11, 12

*United States v. Fernandez*, 443 F.3rd 19 (2d Cir. 2006) ......................................14

*United States v. Hayes*, 518 F.3d 989 (8th Cir. 2008) ...........................................11

*United States v. James*, 792 F.3d 962 (8th Cir. 2015) .......................................2, 24

*United States v. Little Bear*, 413 F. App'x 942 (8th Cir. 2011) .............................18

*United States v. Montoya*, 48 F.4th 1028 (9th Cir. 2022) ......................................23

*United States v. Napier*, 463 F.3d 1040 (9th Cir. 2006) ..................................18, 22

*United States v. Nuno-Alvarez*, 182 Fed. Appx. 630 (8th Cir. 2006) ....................14

*United States v. Patton*, 535 F.3d 829 (8th Cir. 2008) ..........................................16

*United States v. Raplinger*, 555 F.3d 687 (8th Cir. 2009) .....................................16

Appellate Case: 22-3312    Page: 4    Date Filed: 03/16/2023 Entry ID: 5255931

*United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020) ..........................................23

*United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009) ................................ 16-17

*United States v. Sepulveda-Contreras*, 466 F.3d 166 (1st Cir. 2006) ...................23

*United States v. Smith*, 982 F.2d 757 (2d Cir. 1992) ..........................................22

*United States v. Spiotto*, 745 Fed. Appx. 667 (8th Cir. 2018) (per curiam) ..........15

*United States v. Stults,* 575 F.3d 834 (8th Cir. 2009) ........................................2, 17

*United States v. Truscello*, 168 F.3d 61 (2d Cir. 1999) .................2, 19, 21, 22, 24

*United States v. Tulloch*, 380 F.3d 8 (1st Cir. 2004) ...........................................23

*United States v. Vega*, 332 F.3d 849 (5th Cir. 2003) ...........................................18

*United States v. Vega-Ortiz*, 425 F.3d 20 (1st Cir. 2005) ...............................18, 23

## STATUTES

18 U.S.C. § 1591(a) ...........................................................................................12

18 U.S.C. § 1594(c) ...........................................................................................12

18 U.S.C. § 3231 ...................................................................................................1

18 U.S.C. § 3583(d) ...........................................................................................18

18 U.S.C. § 3583(f) ............................................................................................18

28 U.S.C. § 1291 ...................................................................................................1

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. § 5D1.3(c) .......................................................................................18, 19

Appellate Case: 22-3312     Page: 5     Date Filed: 03/16/2023 Entry ID: 5255931

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231. Judgment was entered on November 2, 2022, and George filed a timely notice of appeal on November 3, 2022. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

Appellate Case: 22-3312    Page: 6    Date Filed: 03/16/2023 Entry ID: 5255931

# STATEMENT OF THE ISSUE

I.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY IMPOSING AN ABOVE-GUIDELINES SENTENCE.

*United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008)

*United States v. Demeyer*, 665 F.3d 1374 (8th Cir. 2012)

*United States v. Stults,* 575 F.3d 834 (8th Cir. 2009)

II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ITS IMPOSITION OF STANDARD CONDITIONS OF SUPERVISED RELEASE.

*United States v. Drapeau*, 644 F.3d 646 (8th Cir. 2011)

*United States v. James*, 792 F.3d 962 (8th Cir. 2015)

*United States v. Truscello*, 168 F.3d 61 (2d Cir. 1999)

2

## STATEMENT OF THE CASE

On February 13, 2018, C.T., a six-year-old female, was taken to Arkansas Children's hospital due to vaginal discharge. (PSR, at p. 5). ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ Shortly after George had picked C.T. up from her home on an unspecified date prior to February 2018 and taken her to an unknown location, CT's babysitter observed that the girl had bumps on her vagina. (PSR, at pp. 5-6). The babysitter asked C.T. if anyone was bothering her "down there," and C.T. responded "my daddy"; C.T. referred to George as "daddy." (PSR, at p. 6).

On June 19, 2018, C.T. presented at Arkansas Children's Hospital with a fever and progressive rash. (PSR, at p. 6). ████████████████████

████████████████████████████████████████

████████████████████████████████ The investigation revealed that George had consistent contact with C.T. between September 2017 and June 2018. (PSR, at p. 6). ████████████

████████████████████████████████████████

████████████████████████████ In May 2019, George

3

was arrested by state authorities on a charge of rape. (PSR, at p. 7). ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████

C.T. stated in an interview conducted by an FBI forensic interviewer that George would put his penis in her vagina and told her not to talk about it. (PSR, at p. 7). George would also put his penis in her anus and her mouth. (PSR, at p. 7). She stated that it hurt when he would put his penis in her anus. (PSR, at p. 7). During a second interview, C.T. stated that when she was at a hotel with George while her mother was at work, George would call Mario Waters, who would come to the hotel room, make C.T. remove her clothing, and put his penis in her mouth and vagina. (PSR, at 7). C.T. stated that Waters would sometimes give George money. (PSR, at p. 7). She also stated that George returned to the hotel room, held a gun to her head, and told her that he would kill her if she ever told anyone.[1] (PSR, at p. 7). ███████

████████████████████████████████████████████████████████

█████████████████████████████████████ George stated that

---

[1] George denied threatening C.T. with a gun, stating that he threatened Waters with a gun in front of C.T. upon finding Waters engaged in a sex act with C.T. (PSR, at pp. 7-8).

4

C.T.'s mother would prostitute the child and that he would help her with this and was paid for his assistance. (PSR, at p. 8).

On September 3, 2019, the Grand Jury for the Eastern District of Arkansas returned an Indictment charging George and Waters with conspiracy to commit sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c), and sex trafficking of a minor, in violation of 18 U.S.C. § 1594(a)(1) and (c). (R. Doc. 3). On November 10, 2021, he waived indictment and was charged by Superseding Information with conspiracy to commit sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c). (R. Doc. 92, 93). Pursuant to a plea agreement with the United States, George pled guilty to the charge in the Superseding Indictment. (R. Doc. 94, 95). The plea agreement expressly provided, "[t]he parties understand that the Court is not bound by these stipulations." (R. Doc. 95, p. 5).

George's sentencing hearing was held before the district court on October 25, 2022. (R. Doc. 106). The presentence investigation report indicated that, but for the plea agreement, the Guideline sentencing range may have been 360 months to life. (PSR, at p. 19). ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

5

The district court indicated that it was inclined to sentence George to life imprisonment despite parties' recommendation. (IC Hrg. Tr. pp. 3-4). █████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████

The parties indicated that they had no objection to the presentence investigation report, and it was adopted by the district court. (Sent. Hrg. Tr. pp. 3-4). The district court calculated the Guidelines range to be 235 to 293 months' imprisonment. (Sent. Hrg. Tr. p. 4). George argued for a sentence within the parties' recommended sentencing range of 210 to 262 months' imprisonment. (Sent. Hrg. Tr. pp. 5-6). The United States requested a sentence of 262 months' imprisonment. (Sent. Hrg. Tr. p. 6). The district court stated that "given the seriousness of the offense, the nature and circumstances of the offense of pimping and having sex with a 6-year-old baby ████████████, I don't think any sentence - - I don't think that a guideline sentence is appropriate, and I think I'm well within my discretion to give the defendant, DeMarcus George, the maximum allowed by law, which is life imprisonment." (Sent. Hrg. Tr. p. 9). The district court then ordered that George be incarcerated in the Bureau of Prisons for life. (Sent. Hrg. Tr. pp. 9-10).

The district court also sentenced George to lifetime supervised release in the event he is ever released from prison. (Sent. Hrg. Tr. p. 10). Regarding the conditions of supervised release, the district court stated,

> I will order him to participate in sex offender treatment, which may include - - well, the probation office will set the terms of that treatment. He'll also have to pay the 10-dollar co-pay for that. I am going to order him to mental health counseling as a condition of his supervision. He'll have to pay - - what will happen, Mr. George, is a counselor will assess you and then will give you the treatment that you need and you'll have to pay a 10-dollar co-pay for that. As far as all the computer monitoring and all that, I am not going to assess all that. I'm going to order that probation provide the state of Arkansas with any information it needs to list Mr. George under the sex predator statutes and sex offender statutes and notification statutes.

> I'm going to order that Mr. George not possess any visual depictions, including photographs, film, video, or other types of computer-generated images of any sexual acts. I'm going to order that Mr. George not be permitted to enter any type of adult book stores, strip clubs, adult sex-themed entertainment. I'm going to order that he not have any direct contact with any children under the age of 18, that he not go or remain in any place where he knows that children under the age of 18 are present, including parks, schools, playgrounds, and childcare facilities.

> I'm going to order his to participate in a substance abuse treatment program. I might have said that, but just to make sure. May include drug and alcohol testing, outpatient counseling, and residential treatment. I'm going to order him to abstain from the use of alcohol during the course of treatment. He'll have to pay the co-pay of $10 per session, and all of those co-pays are based on your ability to pay. I'm also going to order him to pay the 100-dollar special assessment. I'm not going to impose a fine and I am going to order him to cooperate in the collection of DNA.

7

(Sent. Hrg. Tr. pp. 10-11). The district court also ordered George to have no contact with C.T. (Sent. Hrg. Tr. p. 11). George objected to the above-Guidelines sentence imposed by the district court. (Sent. Hrg. Tr. p. 12).

The judgment was entered on November 2, 2022. (Add. 1, R. Doc. 109). Included in the conditions of supervised release in the written judgment are thirteen standard conditions of supervision. (Add. 4; R. Doc. 109, at p. 4). George filed a timely notice of appeal on November 3, 2022. (R. Doc. 111).

On March 8, 2023, the district court also imposed a sentence of life imprisonment as to co-defendant Mario Waters. (R. Doc. 121).

## SUMMARY OF THE ARGUMENT

The district court did not abuse its discretion by imposing a sentence above the Guidelines range. ████████████████████████████████████████ ████████████████████████████████████████████

The district court's statements at sentencing make it clear that it sentenced George to life imprisonment based on George's conduct in engaging in sexual acts with C.T., a six-year-old, and permitting others to engage in sexual acts with her for money,

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

In enacting the statute under which George was convicted, Congress authorized the imposition of a sentence of life imprisonment. This Court has approved substantial sentences in cases involving particularly abhorrent conduct. George's conduct, combined with the fact that C.T. will carry the consequences of that heinous conduct for the rest of her life, justifies the sentence imposed by the district court. The district court acted within its discretion in sentencing George to life imprisonment.

The district court also did not abuse its discretion by imposing standard

9

conditions of supervised release in the written judgment. Unlike special conditions of supervised release, the standard conditions are administrative in nature and are necessary in order to permit effective supervision of a defendant on supervised release. As such, they are inherent in the imposition of a term of supervised release. The inclusion of the standard conditions in the written judgment is not a conflict with the oral pronouncement. At most, an ambiguity between the two results from the inclusion of the standard conditions in the written judgment. Alternatively, if this Court determines that the district court did abuse its discretion by including the standard conditions in the written judgment, the United States respectfully requests that this Court order a limited remand for the purpose of announcing the standard conditions.

10

<u>**ARGUMENT**</u>

**I.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY IMPOSING AN ABOVE-GUIDELINES SENTENCE.**

**A.  Standard of Review**

This Court reviews "the imposition of sentences, whether inside or outside the Guidelines range" for abuse of discretion. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (quoting *United States v. Hayes*, 518 F.3d 989, 995 (8th Cir. 2008)). "A district court abuses its discretion when it (1) 'fails to consider a relevant factor that should have received significant weight'; (2) 'gives significant weight to an improper or irrelevant factor'; or (3) 'considers only the appropriate factors but in weighing those factors commits a clear error of judgment.'" *Id.* (citation omitted).

The Court first ensures that the district court committed no significant procedural error, including "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Absent a procedural error, the Court reviews substantive reasonableness for

11

abuse of discretion. *Id.*[2] The Court is "not permitted to apply a presumption of unreasonableness if the sentence is outside the Guidelines range" but instead "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 461-62.

## B. Discussion

George was convicted of violating 18 U.S.C. § 1594(c), which states that "[w]ho ever conspires with another to violate section 1591 shall be fined under this title, imprisoned for any term of years, or for life, or both." 18 U.S.C. § 1591(a) states,

> Whoever knowingly—
>
> **(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> **(2)** benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the

---

[2] George has not alleged procedural error on appeal.

Appellate Case: 22-3312     Page: 17     Date Filed: 03/16/2023 Entry ID: 5255931

age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

The district court sentenced George to life imprisonment, which is permitted for the offense of conviction. George argues on appeal that his sentence is substantively unreasonable. He is wrong.

13

[REDACTED]

Here, in sentencing George to life imprisonment, the district court expressly stated that it was imposing the sentence due to the seriousness of the offense and the nature and circumstances of the offense. This is a clear indication that the sentencing court determined George's sentence utilizing the § 3553(a) sentencing factors. The court did not consider an improper factor in determining the sentence. Neither did the Court fail to consider a necessary factor in determining the sentence.

In determining the sentencing range for the offense of conviction, Congress determined that circumstances could exist in which a sentence of life imprisonment

14

was warranted. This case presents those circumstances. George engaged in numerous sexual acts with a six-year-old girl left in his care that both hurt her and ████████████████████████████████████████████████████████████ ████████████████████████████ In addition to this, George forced her to have sex with other adults for money. These activities resulted in her being infected with other sexually transmitted diseases. In addition to the life-altering difficulties and potential deleterious effects to C.T.'s physical health ████████████████████████ ████████████████████████████████████████████, "[i]t has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults." *New York v. Ferber,* 458 U.S. 747, 758 n. 9 (1982). "Long-term studies show that sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional, and sexual development in ways which no just or humane society can tolerate." *Kennedy v. Louisiana*, 554 U.S. 407, 468 (2008) (Alito, J., dissenting) (citation and quotation marks omitted).

This Court has previously stated that "[v]ery long prison sentences for particularly abhorrent conduct have been repeatedly upheld." *United States v. Demeyer*, 665 F.3d 1374, 1375 (8th Cir. 2012) (affirming a 120-year sentence for a defendant who raped his developmentally disabled daughter, photographed her

15

engaged in sexually explicit conduct and transmitted the images over the internet); *see United States v. Davenport*, 910 F.3d 1076 (8th Cir. 2018) (affirming an 840-month sentence for a defendant convicted of sexual exploitation of a child and child-pornography offenses); *United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008) (affirming a 750-year sentence for a defendant who took sexually-explicit photographs of young girls); *United States v. Spiotto*, 745 Fed. Appx. 667, 669 (8th Cir. 2018) (per curiam) (affirming statutory maximum sentence of 720 months, "effectively a life sentence," based on the seriousness of defendant's crimes where he sexually abused a three-month-old and 11-month old and allowed one victim to remain with a co-defendant so he could rape her); *United States v. Raplinger*, 555 F.3d 687 (8th Cir. 2009) (affirming sentence of 457 months and 10 days' imprisonment, "essentially equivalent to a life sentence," for sexual exploitation of a child, distribution of child pornography, and possession of child pornography with a 15-year-old victim); *United States v. Patton*, 535 F.3d 829 (8th Cir. 2008) (affirming life sentence on each count for five counts of production of child pornography). The United States Court of Appeals for the Eleventh Circuit has also observed that "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses, and courts have upheld lengthy sentences in these cases as substantively reasonable." *United States v. Sarras*, 575 F.3d 1191, 1220

16

(11th Cir. 2009) (upholding as reasonable a 100-year sentence for a defendant who persuaded his minor stepdaughter to engage in explicit sexual conduct and who possessed child pornography) (collecting cases). Here, the district court decided that the just and appropriate punishment for George's actions was for him to spend the rest of his life incarcerated.

The district court did not abuse its discretion in determining the sentence, and the sentence imposed should be affirmed. *See United States v. Stults,* 575 F.3d 834, 849 (8th Cir. 2009) ("Where the district court in imposing a sentence makes 'an individualized assessment based on the facts presented,' addressing the defendant's proffered information in its consideration of the § 3553(a) factors, such sentence is not unreasonable." (quoting *Gall*, 552 U.S. at 50).

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ITS IMPOSITION OF STANDARD CONDITIONS OF SUPERVISED RELEASE.

### A. Standard of Review

This Court reviews the imposition of the terms and conditions of supervised release for abuse of discretion. *United States v. Drapeau*, 644 F.3d 646, 655 (8th Cir. 2011).

### B. Discussion

George argues that the district court never informed him he must comply with

17

the 13 standard conditions of supervised release at his sentencing, and that this purported error violated the Double Jeopardy clause and necessitates vacatur of the conditions.

18 U.S.C. § 3583(d) lists certain mandatory and discretionary conditions of supervised release. The discretionary conditions are described as "standard" conditions in the Guidelines that are recommended for supervised release. U.S.S.G. § 5D1.3(c). Furthermore, 18 U.S.C. § 3583(f) allows the court to "direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required."

"[A] number of circuits have held that a district court may refer generally to the standard conditions of the U.S. Sentencing Guidelines in § 5D1.3 and is not required to manually recite each mandatory and standard condition of supervised release." *Drapeau*, 644 F.3d at 657 (citing *United States v. Little Bear*, 413 F. App'x 942, 944–45 (8th Cir. 2011) (unpublished); *United States v. Napier*, 463 F.3d 1040, 1043 (9th Cir. 2006); *United States v. Vega-Ortiz*, 425 F.3d 20, 22 (1st Cir. 2005); *United States v. Vega*, 332 F.3d 849, 853 n. 8 (5th Cir. 2003) ("Although we require special conditions like drug treatment to be included in the oral pronouncement of

18

sentence, 'explicit reference to each and every standard condition of supervision is not essential to the defendant's right to be present at sentencing.' This difference in law reflects the distinction between the general applicability of the standard (and mandatory) conditions and the discretionary applicability of the special ones." (citations omitted)); *United States v. Truscello*, 168 F.3d 61, 63–64 (2d Cir. 1999).

The district court referred to the statutory range of supervised release and the guideline range of supervised release associated with George's offense. (Sent. Hrg. Tr. p. 5). The thirteen Standard Conditions that are listed in George's judgment are the same thirteen standard conditions described in U.S.S.G. § 5D1.3(c):

> (1) The defendant shall report to the probation office in the federal judicial district where he or she is authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs the defendant to report to a different probation office or within a different time frame.

> (2) After initially reporting to the probation office, the defendant will receive instructions from the court or the probation officer about how and when to report to the probation officer, and the defendant shall report to the probation officer as instructed.

> (3) The defendant shall not knowingly leave the federal judicial district where he or she is authorized to reside without first getting permission from the court or the probation officer.

> (4) The defendant shall answer truthfully the questions asked by the probation officer.

> (5) The defendant shall live at a place approved by the probation officer.

19

If the defendant plans to change where he or she lives or anything about his or her living arrangements (such as the people the defendant lives with), the defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

(6) The defendant shall allow the probation officer to visit the defendant at any time at his or her home or elsewhere, and the defendant shall permit the probation officer to take any items prohibited by the conditions of the defendant's supervision that he or she observes in plain view.

(7) The defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the defendant from doing so. If the defendant does not have full-time employment he or she shall try to find full-time employment, unless the probation officer excuses the defendant from doing so. If the defendant plans to change where the defendant works or anything about his or her work (such as the position or the job responsibilities), the defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, the defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change.

(8) The defendant shall not communicate or interact with someone the defendant knows is engaged in criminal activity. If the defendant knows someone has been convicted of a felony, the defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer.

(9) If the defendant is arrested or questioned by a law enforcement officer, the defendant shall notify the probation officer within 72 hours.

(10) The defendant shall not own, possess, or have access to a firearm,

ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers).

(11) The defendant shall not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

(12) If the probation officer determines that the defendant poses a risk to another person (including an organization), the probation officer may require the defendant to notify the person about the risk and the defendant shall comply with that instruction. The probation officer may contact the person and confirm that the defendant has notified the person about the risk.

(13) The defendant shall follow the instructions of the probation officer related to the conditions of supervision.

These thirteen standard conditions of supervised release are recommended by the Guidelines. The district court's statement that it was imposing supervised release and its inclusion of the thirteen standard conditions in the judgment was a permissible clarification of its oral sentence.

"Implicit in the very nature of supervised release is that certain conditions are necessary to effect its purpose." *Truscello*, 168 F.3d at 62. Here, as in *Truscello*, "the difference between the oral pronouncement of sentence and the written judgment did not amount to a conflict, but rather that the latter reflected a clarification of what the oral pronouncement meant by 'supervised release.'" *Id*. at 63. Additionally, the "standard conditions" are "basic administrative requirement[s] essential to the

21

functioning of the supervised release system," and have become boilerplate due to their almost uniform imposition. *Id*. (citing *United States v. Smith*, 982 F.2d 757, 764 (2d Cir. 1992)).

The boilerplate conditions of standard supervised release found in U.S.S.G. § 5D1.3(c) are "sufficiently detailed that many courts find it unnecessarily burdensome to recite them in full as part of the oral sentence." *Napier*, 463 F.3d at 1043. Thus, the imposition of "mandatory and standard conditions is deemed to be implicit in an oral sentence imposing supervised release." *Id*. (citing *Truscello*, 168 F.3d at 62). "When those standard conditions are later set forth in a written judgment, the defendant has no reason to complain that he was not present at this part of his sentencing because his oral sentence necessarily included the standard conditions." *Id*. Unlike special conditions, the standard conditions are administrative in nature and are necessary in order to ensure effective supervision of a defendant after his or her release from confinement. If the conditions were invalidated, the United States Probation Office would lack the ability to supervise George, thereby defeating the purpose of supervised release.

The district court is not required to read aloud every part of the written judgment that will finalize a criminal defendant's sentence. *See Truscello*, 168 F.3d at 63 (finding there was no real inconsistency or conflict but rather an ambiguity

22

between oral sentence imposing supervised release and written judgment and commitment order that included 14 standard conditions of release not articulated during oral pronouncement); *United States v. Montoya*, 48 F.4th 1028, 1035-36 (9th Cir. 2022) (finding that "[w]hile it is better practice for the district court to orally advise defendants of standard conditions of supervised release, the district court did not have to do so under [9th Circuit] precedent."); *United States v. Sepulveda-Contreras*, 466 F.3d 166, 169–70 (1st Cir. 2006) ("Defendants are deemed to be on constructive notice for mandatory and standard conditions announced for the first time in a written judgment, and therefore have no right-to-be-present claim with respect to any such condition.") (citing *Vega–Ortiz,* 425 F.3d at 22–23 (mandatory conditions); *United States v. Tulloch*, 380 F.3d 8, 13–14 & n. 8 (1st Cir. 2004) (standard conditions)); *but cf. United States v. Rogers*, 961 F.3d 291, 297 (4th Cir. 2020) (following the Fifth and Seventh Circuits in concluding that the district court was required to orally pronounce the defendant's supervised release discretionary conditions).

While in this case the district court did not explicitly refer to "standard conditions," but generally referred to conditions of supervised release, this yielded—at most—an ambiguity and not an inconsistency or conflict between the oral pronouncement of the sentence and the standard conditions in the judgment.

23

The imposition of the standard conditions is implicit in the district court's oral sentence imposing supervised release. *See Drapeau*, 644 F.3d at 656 ("Our view is buttressed by the fact that we previously have concluded that, at oral sentencing, even the most general allusion to the 'standard conditions' of supervised release is a sufficient basis on which to predicate the imposition of each of the conditions normally regarded as standard.") (quoting *Truscello*, 168 F.3d at 63–64). The district court did not abuse its discretion in following the Sentencing Guidelines and imposing the standard conditions.

In the alternative, if the Court determines the district court abused its discretion, limited remand for the district court to announce the standard conditions is appropriate. *United States v. James*, 792 F.3d 962, 972 (8th Cir. 2015) (finding that where written special conditions of supervised release are broader than oral pronouncement, remand is warranted to allow district court to harmonize written condition with oral sentence).

24

## <u>CONCLUSION</u>

For the foregoing reasons and citations to authority, this Court should affirm

George's sentence.

Respectfully submitted,

JONATHAN D. ROSS
United States Attorney


By: */s/ Kristin Bryant*
    Kristin Bryant
    AR Bar No. 2009156
    Assistant United States Attorney
    P.O. Box 1229
    Little Rock, Arkansas 72203
    (501) 340-2600
    Kristin.Bryant@usdoj.gov

25

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,149 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in size 14 in Times New Roman.

3.     This document has been scanned for viruses and is virus-free, in accordance with United States Court of Appeals for the Eighth Circuit Local Rule 28A(h).

/s/ Kristin Bryant
Kristin Bryant
Assistant U.S. Attorney
AR Bar Number 2009156
P.O. Box 1229
Little Rock, Arkansas 72203
(501)340-2600
Kristin.Bryant@usdoj.gov

26

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this brief for review on March 14, 2023.


/s/ *Kristin Bryant*
Kristin Bryant
Assistant U.S. Attorney
AR Bar Number 2009156
P.O. Box 1229
Little Rock, Arkansas 72203
(501)340-2600
Kristin.Bryant@usdoj.gov

27